LaShawn D. Jenkins (021840)
**JENKINS LAW FIRM**
4020 North 20th Street, Suite 100
Phoenix, AZ 85016
Telephone: 602-283-9868
Facsimile: 602-412-3954
Email: LaShawn.Jenkins@thejenkinslawfirm.com

Manotti L. Jenkins
Law Offices of Manotti L. Jenkins, LTD.
655 West Irving Park Road, Suite 306
Chicago, Illinois 60615
(312) 208-9537 (Tel.)
(872) 228-8153 (Fax)
*[Pro Hac Vice Application will be filed]*

Attorneys for Plaintiff David Kelly

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID E. KELLY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE MARICOPA COUNTY SHERIFF'S OFFICE and SHERIFF JOE ARPAIO, individually; and DOES I through XX,<br><br>　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES**<br>[Copyright Infringement]<br><br>**JURY TRIAL DEMANDED** |

　　COMES NOW the Plaintiff, David E. Kelly (hereinafter, the "Plaintiff" and "Mr. Kelly"), by and through his attorneys of record, Manotti L. Jenkins of the Law Offices of Manotti L. Jenkins, LTD, and LaShawn D. Jenkins of the Jenkins Law Firm, and alleges as

follows:

## I. PARTIES, JURISDICTION AND VENUE

1. At all times relevant to the allegations in this Complaint, Mr. Kelly resided in Maricopa County, Arizona, and was thus a citizen of the State of Arizona.

2. Defendant Maricopa County Sheriff's Office (hereinafter, "Defendant MCSO") is the Sheriff's Office of a county subdivision of the State of Arizona. Defendant MCSO is subject to suit for illegal acts of copyright infringement as alleged in this Complaint.

3. Defendant Sheriff Joe Arpaio (hereinafter "Defendant Arpaio"), on information and belief, at all relevant times hereto was the Sheriff of Maricopa County, did reside and does reside in said county, and thus was/is a citizen of the State of Arizona. Defendant Arpaio engaged in the individual acts of copyright infringement and the state law violation complained of herein both in accordance with and outside of the parameters and responsibilities of his official capacity as Sheriff.

4. The Court has subject matter jurisdiction over Plaintiff's claim for copyright infringement pursuant to 17 U.S.C. §§ 101, *et seq.*, and §§ 28 U.S.C. 1331 and 1338(a).

5. The Court has personal jurisdiction over the Defendants. Defendant MCSO is the Sheriff's Office of a county subdivision of the State of Arizona. Defendant Arpaio is the Sheriff of Maricopa County and a citizen of the State of Arizona. Both Defendants are doing business in the State of Arizona and have committed unlawful and tortious acts within the State of Arizona. Plaintiff's claims arise out of the conduct that gives rise to personal jurisdiction over the Defendants.

6. Venue for this matter is proper in the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events or

omissions giving rise to the claims set forth herein occurred in this judicial district, and pursuant to §§ 1391(b)(2) and 1400(a).

7. The true names and capacities, whether individual, corporate, or otherwise, of Defendants sued herein as DOES I through XX are unknown to Plaintiff, who therefore sue said defendants by such fictitious name. Plaintiff alleges that each DOE defendant is, in some manner, legally responsible for some or all of damages described herein. When the identity of said Defendants is ascertained, Plaintiff will amend this complaint to reflect their true identities.

## II. FACTS COMMON TO ALL CLAIMS

8. On September 11, 2001, our country was victimized by a terrorist attack that will forever be chronicled in the annals of U.S. and world history.  Determined to proceed with our national past times, certain professional sporting events took place as scheduled, including the 2001 Major League Baseball World Series between the Arizona Diamondbacks and the New York Yankees.

9. The Plaintiff, Mr. Kelly, was then and still is a professional photographer and was then doing business under the name, "Big League Photos."  Mr. Kelly attended the opening game of the 2001 World Series, which took place on October 27, 2001, in Phoenix. Before the ceremonial first pitch, Mr. Kelly was able to photographically capture a vivid and powerful image of the two teams lined up on the baseball diamond – the Diamondbacks extending along the third base line, from third base to home plate, and the Yankees extending along the first base line, from home plate to first base.  On the left side of the photograph, between the second and third bases, the Phoenix Fire Department is captured symbolically raising the tattered American flag from the World Trade Center.  In the foreground were fans seated just behind home plate and in the background was a massive American flag being held by a group of persons, slightly adjacent to a group of honor

guardsmen holding smaller versions of the flag. Entitled, "Remembering September 11th, 2001," the Plaintiff registered the photograph with the United States Copyright Office (hereinafter, the photograph is referred to as: the "Copyrighted Photograph"). Attached hereto as Ex. A is a true and correct copy of the Copyrighted Photograph. Attached hereto as Ex. B is a true and correct copy of Plaintiff's U.S. Copyright, Reg. No. VA0001175518 (hereinafter, the "Federal Copyright").

10. On September 10, 2002, Plaintiff met Raymond Cedric Young (hereinafter, "Mr. Young"). Mr. Young represented himself to Plaintiff as an upstanding, former Major League baseball player who knew a lot of people and had many connections in professional baseball and among sports memorabilia dealers. Plaintiff considered a potential business arrangement with Mr. Young to be a superb way to proliferate on a mass scale the Copyrighted Photographs, to aid in the process of healing a severely wounded nation.

11. Unbeknownst to the Plaintiff, Mr. Young had served prison time under the authority of the Arizona Department of Corrections for at least two forgery convictions in the 1990's, both crimes having occurred in Maricopa County during the tenure of Defendant Arpaio. Mr. Young had additional criminal bouts with the Arizona authorities throughout the 2000's that occurred in Maricopa County during the tenure of Defendant Arpaio.

12. Totally unaware of Mr. Young's deceitful history and criminal past, Plaintiff and his company, Big League Photos, entered into an agreement with Mr. Young on September 16, 2002 (the "Agreement"). Under the Agreement, Mr. Young was to serve as a sales agent for Big League Photos with respect to the wholesale distribution of posters bearing the image of the Copyrighted Photograph (hereinafter, the posters are referred to as the "Copyrighted Posters). For his services, Mr. Young was to receive compensation at a rate of forty percent (40%) commission on his sales to new customers and fifteen percent (15%) commission on customer reorders. Also under the Agreement, Big League Photos

was to retain exclusive rights to the worldwide distribution of the Copyrighted Posters. Further, the Agreement provided that Mr. Young was to submit any orders for sales of the Copyrighted Posters by fax or e-mail directly to the Plaintiff and Big League Photos for approval, and the exclusive responsibility to print and ship the Copyrighted Posters remained with the Plaintiff and Big League Photos.

13. In September 2002, shortly after entering into the Agreement with the Plaintiff, Mr. Young began executing his plans to violate the Agreement, and he subsequently did just that. First, Mr. Young mass produced a business card that illegally represented that he was the owner of Big League Photos, which was Plaintiff's company through which Plaintiff executed the Agreement and in association with which he obtained the Federal Copyright. Mr. Young used the phony business cards to deceive several copying companies to mass produce, on information and belief, in excess of 300,000 counterfeit copies of the Copyrighted Posters.

14. From there, Mr. Young commenced to orchestrate a colossal scheme of distributing, for financial gain and at the Plaintiff's expense, massive amounts of the counterfeit Copyrighted Posters to over 100 vendors throughout the country – vendors who in turn made millions of dollars exploiting Plaintiff's intellectual property. Moreover, Mr. Young and at least one other person conspired to produce t-shirts bearing Plaintiff's Copyrighted Photograph, both fraudulently and criminally claiming ownership of the copyright on the t-shirts. In addition, Mr. Young had approximately 250 vinyl banners bearing the Copyrighted Photograph printed and sold.

15. In 2006, the Plaintiff, d/b/a Big League Photos, filed a lawsuit in Maricopa County Superior Court for breach of contract and other counts against Mr. Young and other parties. The Plaintiff successfully obtained monetary judgments against all the parties in 2008, specifically in the amount of $1.125 million against Mr. Young. The Plaintiff also

was successful in 2012 in opposing Mr. Young's attempt to discharge that monetary judgment in bankruptcy, which matter was pending in the U.S. Bankruptcy Court for the District of Arizona, in Phoenix.

16. But aside from the civil judgment against him, Mr. Young's conduct was so blatant, deliberate and pernicious as to constitute state and federal crimes, including but not limited to, criminal copyright infringement pursuant to 17 U.S.C. § 506(a) ("Any person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain" shall be punished as provided in §18 U.S.C. § 2319).  In fact, the pernicious nature of Mr. Young's conduct perfectly illustrates the very reason the criminal copyright statute was drafted and enacted.

17. As soon as the Plaintiff learned about Mr. Young's criminal activities in 2002, the Plaintiff began contacting Arizona law enforcement authorities, and contacted Defendant MCSO and Defendant Arpaio for the first time in 2003.  Plaintiff informed the Defendants of his contractual relationship with Mr. Young and Mr. Young's violation of that Agreement, as well as Mr. Young's criminal conduct in falsely claiming ownership of Plaintiff's business and producing and selling the counterfeit Copyrighted Posters.  Despite the Plaintiff having contacted Defendant MCSO on many occasions since 2003, having spoken with MCSO sheriff deputies and others, informing them of Mr. Young's civil and criminal activities in derogation of his intellectual property rights, the Defendants refused to arrest Mr. Young or to even investigate the matter.  Instead, the Defendants permitted Mr. Young's criminal activities to continue unabated; indeed, on information and belief, such criminal activities continue through the present time.

18. As stated above, the Plaintiff successfully opposed Mr. Young's attempt to have the civil judgment against him discharged in 2012.  On information and belief, at some point during the pendency of the bankruptcy proceedings and after the Plaintiff continued

to inform the Defendants of Mr. Young's criminal activities against him, Defendant Arpaio and Mr. Young met and discussed Plaintiff's charges against Mr. Young. Plaintiff's best estimation is that such a meeting occurred in early 2012. On information and belief, Mr. Young and Defendant Arpaio agreed that Mr. Young would donate 3,000 copies of the counterfeit Copyrighted Posters to the MCSO in exchange for Defendant Arpaio's continuing to refrain from arresting Mr. Young for his state and federal criminal conduct against the Plaintiff. Plaintiff's belief in this regard is partially based on the photograph of Mr. Young and Defendant Arpaio, attached hereto as Ex. C, in which the two men are holding a copy of one of the counterfeit Copyrighted Posters. The photograph includes false language running across the top, on information and belief, created by Mr. Young, and states, in all caps and bold: **"RAY AND SHERIFF JOE POSE FOR RAYS DONATION OF 3000 POSTERS TO MARICOPA COUNTY SHERRIFS OFFICE. LIMITED EDITION PRINT OF THE 911 TRIBUTE AT DIAMONDBACK STADIUM THAT RAY OWNED THE COPYRIGHT"**.

19. In December 2012, Plaintiff learned that the Defendants were selling the counterfeit Copyrighted Posters that were donated to them by Mr. Young at Phoenix-based auctions and possibly other places. On information and belief, the Defendants have already sold all of the 3,000 donated counterfeit Copyrighted Posters. On information and belief, Defendants' actions have substantially contributed to the Plaintiff's injury over the past several years, including the Plaintiff's having been homeless in the Phoenix area and in the Pasadena, California area for approximately four (4) years.

20. On the afternoon of January 25, 2013, the Plaintiff had a chance meeting with Defendant Arpaio on a downtown Phoenix street. The two men spoke for approximately fifteen (15) minutes. They discussed the fact that Defendant Arpaio had obtained the 3,000 counterfeit Copyrighted Posters from Mr. Young and Defendant Arpaio admitted to having

sold the counterfeit Copyrighted Posters.  Defendant Arpaio also specifically recalled knowing that the Plaintiff had contacted his office and had spoken with his deputies and his secretary about the criminal activity perpetrated against him by Mr. Young.  Having acknowledged those transgressions against the Plaintiff, Defendant Arpaio promised the Plaintiff that he would "make it up to you somehow."

21.     By making such a promise, Defendant Arpaio evinced personal responsibility to the defendant beyond his responsibility as the Sheriff of Maricopa County.  Furthermore, Defendant Arpaio's conduct in cutting a deal to have a known criminal, Mr. Young, donate 3,000 copies of the counterfeit Copyrighted Posters to the MCSO in exchange for Defendant Arpaio's continuing to refrain from arresting Mr. Young for his criminal conduct against the Plaintiff, exhibited conduct so beyond the scope and pale of his responsibilities as the chief county law enforcement officer as to require him to take personal responsibility for his egregious actions.

22.     On November 21, 2014, one of the deputies of Defendant MCSO admitted to the Plaintiff that the Defendants had sold framed copies of the counterfeit Copyrighted Posters at their charity auctions, and that the Defendants had made money from the sales.  Plaintiff reasonably believes the deputy's admission indicated that such sales were very recent to the time period of November 21, 2014.

23.     The Plaintiff has attempted on numerous occasions over the past twelve (12) years to get justice from the Defendants, including as recently as 2012 through August 2015.  These attempts have included many communications with the MCSO, including attempts to obtain relevant information through the Federal and State of Arizona Freedom of Information Acts, attempts to obtain compensation without resorting to formal legal process, and, as discussed above, attempts to have Mr. Young arrested and his criminal activities against the Plaintiff curtailed.  Plaintiff's attempts have been rebuffed and

thwarted at every turn by the Defendants, despite Defendant Arpaio's admissions of liability. Plaintiff's attempts to obtain justice from the Defendants have put the Defendants on consistent notice of Plaintiff's intent to seek compensation for their wrongful acts and thus the Defendants are under no unfair prejudice in being forced to defend against this lawsuit.

24. Except with respect to the individual conduct complained of in Paragraph 21, above, by Defendant Arpaio, at all other relevant times that Defendant Arpaio and other employees of the Maricopa County Sheriff's Office were engaging in the offending conduct complained of herein, including but not limited to, the sales of the counterfeit Copyrighted Posters, they were acting within the scope of their responsibilities as agents of Defendant MCSO.

### III.  CLAIMS FOR DAMAGES

#### COUNT I

(Copyright Infringement – 17 U.S.C. §§ 106, 501, 504, 505 and 506 )

(Against Both Defendants)

25. Plaintiff repeats and incorporates by reference each and every allegation set forth in paragraphs 1 through 24, inclusive.

26. At all times relevant hereto, Plaintiff has been the creator and owner of the photographic work, entitled, "Remembering September 11th, 2001."

27. For the photographic work at issue in this matter, Plaintiff holds a copyright registration certificate from the United States Copyright Office – Reg. No. VA0001175518.

28. Without authorization, the Defendants distributed and sold Plaintiff's federally registered copyrighted photographic work.

29. The Defendants' conduct in unlawfully distributing and selling the Plaintiff's federally registered copyrighted work was willful, wanton and malicious, in that the

Defendants knew their conduct constituted copyright infringement and they proceeded to engage in the conduct anyway.

30. As a result of their wrongful conduct, the Defendants are liable to the Plaintiff for copyright infringement pursuant to 17 U.S.C. § 501. Plaintiff has suffered substantial financial losses as a result of the Defendants' conduct.

31. Plaintiff is entitled to recover damages, which includes his losses and any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. § 504(b). Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c).

32. In addition, because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

33. Plaintiff is also entitled to recover his attorney's fees and costs of suit pursuant to 17 U.S.C. § 505.

34. Based on Plaintiff's reasonable belief that the admission by the MCSO deputy on November 21, 2014, that the Defendants had sold framed copies of the counterfeit Copyrighted Posters at their charity auctions, indicated that such sales had taken place recently from the date of such admission, Defendants' infringing conduct as claimed herein fall within the three-year statute of limitations for copyright infringement.

## JURY DEMAND

35. Plaintiff hereby demands a jury trial in this case.

## PRAYER

WHEREFORE, Plaintiff David E. Kelly respectfully requests judgment as follows:

(1) That the Court enter a judgment against Defendants that they have:

    a. Willfully infringed Plaintiff's rights in a federally registered copyright under 17 U.S.C. § 501;

      b. Caused financial harm to the Plaintiff through the act of infringement complained of above.

(2) That the Court order Defendants to pay Plaintiff's general, special, actual and statutory damages as follows:

      a. Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or, in the alternative, enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of Plaintiff's copyright;

(3) That the Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorney's fees he incurred in prosecuting this action pursuant to 17 U.S.C. § 504.

(4) That the Court grant to Plaintiff such other and additional relief as is just and proper.

DATED: December 17, 2015                Respectfully submitted,

/s/LaShawn D. Jenkins
LaShawn D. Jenkins
Jenkins Law Firm
4020 N. 20th St., Suite 100
Phoenix, Arizona 85016

Manotti L. Jenkins
Law Offices of Manotti L. Jenkins, LTD.
655 West Irving Park Road, Suite 306
Chicago, Illinois 60615
[*Pro Hac Vice Application to be Filed*]

Attorneys for Plaintiff David E. Kelly